BROWN & FROLEY *v.* MONROE COUNTY ROAD IMPROVEMENT DISTRICT.

Opinion delivered May 22, 1922.

1. HIGHWAYS—SUFFICIENCY OF EVIDENCE.—In a contractor's action against a road improvement district for compensation for grading, evidence *held* to sustain finding that there was no error in the engineer's estimates of the quantities of grading to be done.

2. CONTRACTS—DECISION OF ENGINEER—CONCLUSIVENESS.—A decision of the engineer of a road improvement district as to the quantity of grading done by contractors is conclusive, in the absence of fraud, where the parties stipulated to that effect.

3. HIGHWAYS—GRADING CONTRACT—OBLIGATION TO SUPPLY GRAVEL.—A grading contract did not require a road improvement district to supply contractors with a sufficient quantity of gravel to keep the contractor's employees steadily employed where the contract did not expressly so provide.

4. HIGHWAYS—SUFFICIENCY OF EVIDENCE.—In a grading contractor's action against a road district for damages for loss of time caused by failure of district's engineers to set grade stakes, evidence *held* to sustain finding of chancellor that the grade stakes were set.

5. HIGHWAYS—LIQUIDATED DAMAGES—WAIVER.—Where the engineer of a road improvement district acquiesced in the suspension of grading because of unfavorable weather conditions, the district will be *held* to have waived a provision for liquidated damages on failure to complete the contract within a certain time.

Appeal from Monroe Chancery Court; *John M. Elliott,* Chancellor; affirmed.

*Mehaffy, Donham & Mehaffy,* for appellant.

*C. F. Greenlee,* for appellee.

WOOD, J.   Brown & Froley (hereinafter called appellants) are partners engaged in the business of constructing roads in the State of Arkansas.   On the 12th of February, 1919, they entered into a contract with the Monroe County Road Improvement District, through its commissioners, to construct a certain road in Monroe County. They alleged that the district is indebted to them in the sum of $14,805.35 for grading; that under the contract the district was to supply appellants with sufficient gravel to keep appellants' employees steadily employed in hauling and placing the same upon the road; that the district breached its contract in this respect, to the damage of the appellants in the sum of $4,872.64; that it was the duty of the district to set grade stakes and at all times to have sufficient work laid out to keep the grading force of the appellant steadily employed; that the district failed to comply with its contract in this respect, to appellants' damage in the sum of $5,056.

The above allegations were contained in the complaint and amended complaint of appellants, and judgment is prayed for the above amounts.

The district, through its commissioners, answered, denying that the appellees were indebted to the appellants in the above amounts, and set up by way of cross-complaint that under the contract the appellants should have completed the work before May 1, 1920; that on account of their failure to comply with the contract in this respect they were indebted to the appellees in the sum of $4,695, liquidated damages, for which they prayed judgment.   The appellees further set up that in June, 1919, the appellants became dissatisfied with the estimates of the quantities of grading allowed appellants by the engineers of the district; that thereupon the appellants and appellees agreed to submit the matter to arbitration, which was done; that the appellants agreed with the appellees that the finding of this board should be binding, and that the board of arbitration found that there had

been no error in the estimate of the engineers of the district in quantities of grading allowed appellants, and that appellants were bound by such finding.

The trial court, after hearing the testimony adduced on the above issues, dismissed the complaint and also the cross-complaint for want of equity. From the decree against them the appellants prosecute this appeal, and appellees cross-appeal.

1. The decree of the court is correct. Under the terms of the contract the appellants agreed to construct the improvement "in exact accord with the plans and specifications, copies of which were attached to and made a part of the contract." Among other provisions in these specifications, is the following: "The engineer shall furnish monthly estimates of the work done upon which partial payments to the contractor shall be based, and, in the absence of fraud or error, his decision as to the value and quantity of work or material shall be final and conclusive." It will be observed that it is not alleged in the complaint that the engineer was guilty of any fraud. The undisputed testimony shows that, after the controversy arose between the appellants and the engineers of the district in regard to the estimate of grading quantities allowed by the engineers to the appellants, the appellants agreed with the engineers of the district that the controversy should be submitted to a board of arbitration, the appellants selecting one, the engineers selecting one, and the State Highway Department selecting the third member of the board. The report of this board in part is as follows: "We visited the work in person and examined both the field and office work, making numerous measurements of the completed work in order to check the cross-sections. The engineer's notes were gone over carefully and the calculations checked in the office. Our investigation has disclosed no error in the engineer's work." This report was signed by all the members of the board of arbitration.

In regard to the estimate of the engineer of the district of the quantity of grading of which the appellants complain, the trial court found as follows:

"A number of witnesses testified on behalf of the plaintiffs as to the number of yards of earth removed, but the testimony of these witnesses is not specific enough to overturn the estimate of the engineers of the district on which the commissioners made settlement. Witness Conley, for the plaintiff, merely gives an estimate of the yardage moved. He does not state he made any measurements of the number of yards, and does not claim to be competent to make a measurement. Witness Dickinson, it seems, made an estimate, but the value of his testimony is considerably diminished by reason of the fact that he, together with two other gentlemen, all claiming to be engineers, signed a written statement in which they said, among other things: 'The investigation has disclosed no error in the engineer's work.' In this statement they also state that they visited the work in person, and examined both field and office work, making numerous measurements, etc. They also state that they went over the engineer's notes carefully," etc.

The above findings of the court we approve. The issue is purely one of fact. The testimony bearing on the issue is voluminous, and it could serve no useful purpose to set it out and discuss it in detail. After a careful examination of the record, we have reached the conclusion that the decided preponderance of the evidence shows that the board of arbitration found and reported correctly that there was no error in the engineer's work. The testimony of the engineer who made the estimates of the work as it progressed and who made a monthly report, and the testimony of three other competent engineers, tended to prove that the estimates of the grading made by the engineer who did the work were correct. The testimony tending to prove otherwise, as the trial court found, was not sufficient to overcome the findings of the engineer who made the estimates and the board of

arbitration. True, the testimony of Dickinson, one of the engineers, who was a member of the board of arbitration, tended to show that the report of the board of arbitration was not really correct, but was made only for the purpose of giving the engineers a "clean bill of health," and that he made a supplementary or second report at the same time in which he stated as follows: "As engineers familiar with this class of work, we are unanimous in the opinion that the circumstances surrounding this work are such that the contractor has necessarily moved more material than is shown by the cross-sections, and that he has not been sufficiently compensated for the actual labor performed." This witness further testified that at the suggestion of Bennett, one of the arbitrators for the engineering firm, the report was divided into two parts; one part wholly clearing the engineering company from any mistakes, and the other a recommendation to the board for relief to the contractors. He further testified there was no doubt in the minds of the arbitrators that the work would cost the contractors approximately twice as much as the estimates amounted to. "There was no doubt in our minds," says the witness, "that the contractors had moved more yardage than was given by the engineering company." This witness, by testifying to matters directly contradicting matters set forth in the report signed by him in connection with the arbitration, places himself in the unenviable attitude of challenging his own report as a member of the board of arbitration. His testimony is not entitled to as much consideration as the testimony of other arbitrators who did not sign his individual report and who flatly contradicted him as to the correctness of such report.

Bennett, one of the other arbitrators, who was selected by the engineering firm, categorically denied that he had requested Dickinson to divide the report into two sections in order to give the engineers of the district a "clean bill of health." He testified that the arbitrators were appointed because of a difference as to quantities al-

lowed by the engineer of the district, and the board was selected to determine whether the engineer's estimates were correct, and in witness' opinion the estimates were correct.

Major Parkes, of the engineering firm, also positively denied that he requested Bennett to sign a report giving his company "a clean bill of health."

The other arbitrator testified that he signed the report. He saw Dickinson's statement. The report was intended to cover all the work done to date. The arbitrators were of the opinion that the contractors had not been sufficiently compensated, and therefore they made a recommendation to the board of commissioners that they should be allowed additional compensation.

The decided preponderance of the evidence shows, however, that the arbitrators were willing to make this recommendation, not because there was any error in the estimates of the grading, but because appellants were victims of weather conditions and other unfortunate circumstances which caused them to lose money in performing their contract. It occurs to us that the trial court was correct, in the conflict between the testimony of Dickinson and his own report and the testimony of another commissioner and other witnesses, in finding that the value of Dickinson's testimony was "considerably diminished." After a careful review of the entire testimony, we conclude that there was no error in the estimates of the quantities of grading given by the engineer of the district to the appellants. Although this arbitration was not binding upon the appellees, nevertheless we are convinced that a decided preponderance of the evidence shows that the finding of the board of arbitration was correct. The decision of the engineer as to the quantity of this work under the terms of the contract was therefore final and conclusive and binding on the appellants. The court ruled correctly in so holding.

2. As to the item of $4,872.64, growing out of the alleged failure of the appellees to supply appellants with a sufficient quantity of gravel to keep appellants' employees

steadily employed, let it suffice to say that the contract does not provide that the appellees shall furnish gravel to the appellants to keep appellants' forces steadily employed, and that a failure upon the part of the appellees to furnish gravel so as to keep appellants' forces from being idle would render the appellees liable in damages for such failure. It must be presumed that the parties were contracting with reference to all the conditions confronting them at the time, such as weather conditions and the difficulties to be encountered in obtaining gravel in sufficient quantities to keep appellants' forces steadily employed. Since the contract does not contain any such provision, liability of appellees predicated upon breach of such provision cannot be maintained. If the appellants contemplated that such a duty and obligation should rest upon the appellees, then they should have seen to it that the contract contained such a provision. In the absence of such contractual duty and obligation, no damages can be recovered by the appellants as for as a breach of contract in this respect. Furthermore, even if the contract had contained such provision, the court found as follows: "Not only is the evidence sufficient to sustain the plaintiffs' contention, but there is testimony tending to show that there was gravel on the siding at Keevil and Overholt." On this issue of fact we are convinced that a preponderance of the evidence sustains the finding of the trial court.

3. In regard to the claim of appellants for damages on account of the loss of time caused by reason of the failure of the appellees' engineers to set grade stakes, the court found "that the plaintiffs' proof going to sustain the same was positively disputed by the defendants and by the engineers who had charge of the work. Furthermore, this item does not seem to have been considered seriously at the time the original complaint was filed."

The original complaint was filed January 15, 1920, and the appellants at that time sought to recover only for alleged damages growing out of the failure of the ap-

pellees' engineers to give appellants correct grading estimates and the failure of the appellees to furnish gravel in sufficient quantities to keep appellants' forces steadily employed. About eighteen months thereafter an amended complaint was filed alleging damages on account of the failure of appellees' engineers to set grade stakes. It occurs to us that if the appellees' engineers failed to set grade stakes, appellants would have been fully advised of this fact when they instituted their action to recover damages on account of erroneous grading estimates. Be this as it may, the testimony on behalf of the appellants tending to prove that their forces were idle because of the failure of the appellees' engineers to set grade stakes was overcome by the testimony of the local engineer in charge of the work to the effect that grade stakes were set. We are convinced that the finding of the chancellor on this item is correct.

4. The trial court refused to award the appellees damages on their cross-complaint. The contract provides that the appellants agreed to begin work on the 25th of February, 1919, and to complete the same before the 1st of May, 1920, and upon failure to complete the work in time it was specified that the appellants should pay to the appellees the sum of $15 for each day delayed as liquidated damages. The appellees, in their cross-complaint, prayed for damages in the sum of $4,695, damages for delaying to complete the work for the period of one year. On account of unfavorable weather conditions and the obstacles because thereof, which appellants had to overcome in the performance of their contract, it was not the intention of the appellees to enforce the above provision of the contract as to liquidated damages. No claim was made for such damages in the original answer of the appellants to the appellees' complaint, and not until the appellant had filed an amended complaint asking for damages on account of the alleged failure of appellees' engineers to set grade stakes did the appellees set up any claim for liquidated damages. It does not appear

that the commissioners at any time previous to this had notified the appellants that they were going to insist on such damages. On the contrary, the testimony tends to prove that the appellees have waived the above provision of the contract as to liquidated damages. One of the appellants testified that they suspended work in November, and that the engineers released their outfit over there until appellants were notified by them to return, and that appellants had not been so notified.

The appellants introduced in evidence a letter from the supervising engineer of the appellees, which it is unnecessary to set forth, but this letter clearly indicates that the appellees through this conduct of the supervising engineer had acquiesced in the suspension of the work by appellants on account of unfavorable weather conditions. This letter shows that the appellees were not going to insist on appellants continuing their full force on the work during the winter, but consented to the use of "two teams and a man to run the grader and haul gravel and keep the road perfect during the winter, or until such time as the engineer shall direct their return of their full force to the work." Under all the circumstances the appellees must be held to have waived the provision of the contract as to liquidated damages.

. We find no error in the decree, and the same is therefore affirmed.