The HOWARD P. FOLEY COMPANY, Appellant,

v.

J. L. WILLIAMS & CO., INC., Highlands Insurance Co., and Standard Brands, Inc., Appellees.

No. 79–1867.

United States Court of Appeals, Eighth Circuit.

Submitted April 15, 1980.

Decided June 5, 1980.

Thomas J. Wingfield, Varner, Stephens, Wingfield, McIntyre & Humphries, Light Tower, Atlanta, Ga. (argued), and H. Clay Robinson, Pryor, Robinson, Taylor & Barry, Fort Smith, Ark., on brief, for appellant.

L. Cody Hayes, Warner & Smith, Fort Smith, Ark., for Standard Brands, Inc.

L. W. Anderson (argued), and Marvin Jones, Dallas, Tex., on brief, for J. L. Williams & Co., Inc.

Before LAY, Chief Judge, ROSS, Circuit Judge, and LARSON, District Judge.*

ROSS, Circuit Judge.

This action arose out of the construction of a nut processing plant and warehouse in Fort Smith, Arkansas. A contract was entered into between appellee Standard Brands, Inc. (Standard Brands), the project owner, and appellee J. L. Williams & Co., Inc. (Williams), the prime contractor. A number of subcontractors were retained to work on the project, including appellant, The Howard P. Foley Company (Foley), who was hired to do the electrical work. Appellee Highlands Insurance Co., was the surety for Williams.

Foley and Williams entered into a contract whereby Foley agreed to perform all the work and furnish all materials outlined in the owner's specifications dealing with electrical work. The subcontract was a standard form, but typewritten onto the form was the following paragraph:

> Time is of the essence in this contract. J. L. Williams & Co., Inc. has agreed to a liquidated damage clause in our contract with the owner. It is therefore imperative that the Bar Chart Schedule attached to this contract be strictly adhered to and

any delays or deviations from this schedule be brought to the immediate attention of J. L. Williams & Co., Inc.

The paragraph was followed by a handwritten note, "No chart included," which was initialed by a representative of appellants.

The subcontract also provided as follows:

1. (a) The parties agree that in the event the Owner makes changes in the work to be performed by Contractor which increases or decreases the work or cost of work of the Subcontractor the Subcontract price will be changed accordingly, providing that such increases or decreases are approved in writing prior to such changes.

(b) * * * The Subcontractor shall prosecute the work undertaken in a prompt and diligent manner whenever such work, or any part of it, becomes available, or at such other time or times as the Contractor may direct, and so as to promote the general progress of the entire construction, and shall not, by delay or otherwise, interfere with or hinder the work of the Contractor or any other subcontractor. * * The Subcontractor agrees to pay Contractor for any and all damages which are caused by Subcontractor's failure to furnish the materials and/or perform the work required by this Subcontract in the time and manner provided herein.

There was no corresponding clause in this instrument whereby the contractor assumed liability to the subcontractor for delay occasioned by the acts of the contractor.

Foley contended that the subcontract incorporated all the provisions of the main contract between Standard Brands and Williams (hereinafter the specifications), and the trial court analyzed the issues in terms of this incorporation.[1] Foley sought dam-

---

* The Honorable EARL R. LARSON, Senior United States District Judge for the District of Minnesota, sitting by designation.

1. The subcontract between Foley and Williams also provided:
   Article 1. The Subcontractor agrees to furnish all material and perform all work as

described in Article 2 hereof in the construction of a nut processing and warehouse facility, Ft. Smith, Arkansas, for Planters Peanuts Division of Standard Brands, Inc., hereinafter

ages for delay in finishing the project on the theories that delay damages are recoverable under the terms of the contract and that appellees Williams and Standard Brands wrongfully interfered with appellant's performance of the contract.

The trial court issued a memorandum opinion and judgment in which it declared that under either theory the contract did not provide Foley with delay damages. We affirm in part and reverse in part.

## I. Contractual Damages.

Of pivotal importance in the trial court's decision was Section 1B of the specifications:

07. *TIME OF COMPLETION:*

(A) It is the desire of the Owner to have the work completed by May 1, 1975.

(B) The Contractor shall stipulate on the Bid Proposal Form the number of calendar days required to complete the work. Based on the Contractor's stipulated time, the sum of $3,000.00 per day will be assessed against the Contractor for failure to complete the work within the stipulated time for causes beyond his control as set forth in the General Conditions.

(C) 1. It is essential that the two-story portion of the facility be watertight and in a condition to receive processing and packaging equipment for installation by December 15, 1974.

2. The Owner agrees to pay the Contractor the sum of $1500.00 per day as

a bonus if the two-story portion of the facility is completed as stated above and if all work is completed prior to May 1, 1975 and the facility is completely operational.

3. Any authorized extension of time beyond May 1, 1975 for any reason, will preclude the payment of the bonus.

(D) The time set for completion for work to be done under this contract is an ESSENTIAL condition of the contract.

The trial court decided that the contract allowed the owner a right to claim damages for delays but omitted a corresponding provision for the benefit of the contractor. Instead, the contractor was provided a bonus if he gave timely performance. Although Article 42(d)[2] of the specifications bound the contractor to the subcontractors by all the obligations that owner assumed to contractor, a substitution of parties in the time of completion paragraph does not result in a payment of delay damages by contractor to subcontractor. Owner in the specifications did not expressly agree to pay delay damages and substituting the parties by incorporation (contractor for owner and subcontractor for contractor) does not result in the contractor derivatively assuming delay obligations towards subcontractor.

Foley on appeal quotes Section 1C, Article 26(e) of the specifications which provide for an extension of time: "This Article does not exclude the recovery of damages for delay by either party under other provisions in the Contract Documents."[3] He

called the Owner, as per plans and specifications prepared by A. Carl Schenck & Associates, hereinafter called "Engineer," as follows: Specifications dated March 22, 1974, and plans dated March 22, 1974, and Addenda 1 through 6, Revision Dates: April 9, 1974, and June 5, 1974, all of which are made a part of this Subcontract; said plans, specifications, addenda and other documents set forth being hereinafter referred to as the "Contract Documents"; * * *
and Article 3. * * *
   This Subcontract and the Contract Documents, insofar as they relate in any part or in any way to the work undertaken herein, constitute the entire agreement between the parties hereto, * * *.

Section 1C, Article 42(c) of the specifications (main contract) related:
   The provisions of this Contract shall be incorporated, by reference, in all subcontracts * * *.

2. Section 1C, Article 42(d):
   Contractor shall be bound to each Subcontractor by all of the obligations that Owner assumes to Contractor, and each Subcontractor shall be bound to Contractor by all the obligations that Contractor assumes to Owner, under the provisions of this Contract.

3. The other parts of this Article indicate that listed delays or delays due to "act or neglect of Owner" were to be resolved by extension of the time for completion:

contends that these damages are due under Section 1C, Articles 24, 25 and 29 of the specifications. These Articles provide for changes and extra work,[4] claims for extra cost and damages,[5] and suspension of work.[6] In addition to mentioning that these sec-

### ARTICLE 26—DELAYS AND EXTENSIONS OF TIME

a. If Contractor be delayed at any time in the progress of the Work by any act or neglect of Owner or the Architect or Engineer, or of any employee of either, or by any independent contractor employed by Owner, or by strikes, lock-outs, fire, flood, unavoidable casualties or any similar causes beyond Contractor's control, or by delay authorized by the Engineer pending arbitration, or by any cause which the Engineer shall decide to justify the delay, then the time of completion shall be extended for such reasonable time as the Architect or Engineer may decide.

b. Authorized changes and extra Work, ordered under the provisions of Article 24 of the General Conditions, which require additional time shall entitle Contractor to a proportionate extension of time which shall be determined by the Architect or Engineer, if Contractor so requests, in writing.

c. No such extension shall be made for delay occurring more than seven days before claim therefore [sic] is made in writing to the Engineer. In the case of a continuing cause of delay, only one claim is necessary.

d. If no schedule or agreement stating the dates upon which Drawings shall be furnished is made, then no claim for delay shall be allowed on account of failure to furnish drawings until two weeks after demand for such drawings and not then unless such claim be reasonable.

4. Section 1C, Article 24 in part provides:

### CHANGES AND EXTRA WORK

a. Owner, without invalidating the Contractor, may order extra work or make changes by altering, adding to or deducting from the Work, the contract sum being adjusted accordingly. All such Work shall be executed under the conditions of the original contract except that any claim for extension of time caused thereby shall be adjusted at the time of ordering such change.

b. In giving instructions, the Engineer shall have authority to make minor changes in the work, *not involving extra cost*, and not inconsistant [sic] with the purposes of the Project. Except in an emergency endangering life, limb or property, *no other extra work or change shall be made unless in pursuance of a written order from Owner*, and no claim for an addition to the contract sum shall be valid unless so ordered.

5. Section 1C, Article 25:

### CLAIMS FOR EXTRA COST AND DAMAGES

a. If Contractor claims that any instructions by Drawings or otherwise involve extra cost under this Contract, he shall give Owner and the Engineer written notice thereof within 48 hours after receipt of such instructions, and in any event before proceeding to execute the Work, (except in emergency endangering life, limb, or property) and the procedure shall then be as provided for changes in the Work. No such claim shall be valid unless so made.

b. If Contractor has any claims for damages against Owner because of any wrongful act or neglect of Owner or anyone employed by him, then such claim shall be made in writing to Owner within a reasonable time of the first observance of such damage. If Contractor and Owner are unable to reach an agreement, the matter shall be submitted to arbitration.

6. Section 1C, Article 29:

### SUSPENSION OR STOPPAGE OF WORK

a. Owner may, at any time, suspend the Work, or any part thereof, by giving ten days' notice to the Contractor in writing. Contractor shall provide temporary protection for the completed portions of the suspended Work. The Work shall be resumed upon ten days' written notice from Owner.

b. In case of such suspension of all or part of the Work causing additional expense not due to the fault or negligence of Contractor, Owner shall reimburse Contractor for the additional expense incurred due to suspension of the Work, provided, however, that this paragraph shall not be construed as entitling Contractor to compensation for delays due to inclement weather, delays due to failure for surety, for suspension or extension of time made at the request of Contractor or for any other delay provided for in the Contract Documents. Claims for such compensation, with complete substantiating records, must be filed with the Architect or Engineer within ten days after the date of order to resume Work in order to receive consideration.

c. If the Work, or any part thereof, shall be stopped by the notice in writing aforesaid, and if Owner does not give notice in writing to the Contractor to resume Work at a date within one year of the date fixed in written notice to suspend, then Contractor may abandon that portion of the Work so suspended, and he will be entitled to the estimates and payments for all Work done on the portions so abandoned, if any.

d. If the Work should be stopped for a period of two consecutive months or more through no fault of Owner, then Owner may order a permanent stoppage of the Work on seven days' written notice to Contractor. Contractor shall thereupon consult with the Architect or Engineer and proceed to do any Work which may be required to protect the Work already done, after which he shall re-

tions have writing or notice requirements, compliance with which was not decided by the trial court, appellees claim that the law in Arkansas is to the effect that "the parties contract with a view to the possibility of delay and if damages for delay are to be recovered the contract must contain an express provision to that effect," *citing Blair v. United States*, 147 F.2d 840, 849 (8th Cir. 1945). This was stated by the Supreme Court of Arkansas in *Brown & Froley v. Monroe County Road Imp. Dist.*, 153 Ark. 606, 612, 241 S.W. 39, 41 (1922):

> It must be presumed that the parties were contracting with reference to all the conditions confronting them at the time, such as weather conditions and the difficulties to be encountered in obtaining gravel in sufficient quantities to keep appellants' forces steadily employed. Since the contract does not contain any such provision, liability of appellees predicated upon a breach of such provision cannot be maintained. If the appellant contemplated that such a duty and obligation should rest upon the appellees, then they should have seen to it that the contract contained such a provision. In the absence of such contractual duty and obligation, no damages can be recovered by the appellants as for a breach of contract in this respect.

The district court found that although the contract provided a right of the owner to claim damages for delay, the general contractor and thus the subcontractor, Foley, by substitution, did not have this contractual right. We agree.

■ Additionally the district court determined that Arkansas has never interpreted a "time-is-of-the-essence" clause, as found in the subcontract, to implicitly give rise to damages for delay in construction contracts. The court found that in this particular contract, the "time-is-of-the-essence" clause was relevant only to the owner's right and was not intended to implicitly provide a right to delay damages for other parties. We agree and affirm the district court's finding that no delay damages are recoverable for Foley under the express terms of this contract.

## II. Wrongful Prevention.

Foley additionally argues that appellees wrongfully prevented appellant from performing the contract. Appellant's original and second amended complaint charged that Williams and Standard Brands "obstructed, hindered, interfered with and delayed the performance of plaintiff's work." Foley charges it did not have sufficient time to complete its work because Williams and Standard Brands failed to erect the structural steel in sufficient time; Williams failed to coordinate the project; and Williams and Standard Brands failed to furnish steel and machinery in accordance with the contract schedule.

The Supreme Court of Arkansas has awarded damages due to delay on the basis of unreasonable hindrance. In *Housing Authority v. Forcum-Lannom, Inc.*, 248 Ark. 750, 454 S.W.2d 101 (1970) the contract provided that the plaintiff-contractor should notify the defendant's engineer when the utility lines to be removed were encountered so that this engineer could notify the local owner and "attempt to get prompt action." The court specifically found:

> [T]hat the defendant was under a duty of cooperation to do whatever was necessary in the project area to enable plaintiff to perform its contract in an orderly manner and that defendant breached this duty in that it failed to use its best efforts to secure the removal of the utilities, underground and overhead, and that such failure unreasonably hindered and delayed

---

move all his equipment and tools. Except for the aforesaid special protective Work, which shall be compensated for as "extra Work", the amount which Contractor may recover from Owner in the event of termination under this Article will be Contractor's reasonable costs incurred on the Work up to termi-

nation (including the loss on materials that have been purchased for use in the Work and must be resold) plus 10%, but will not exceed such portion of the contract price as is proportionate to the amount of Work done, as determined by the Architect or Engineer.

the contractor in the performance of the contract.

*Id.* 454 S.W.2d at 104. Additionally, the court found in general:

> [T]hat there were numerous and disrupting delays and suspensions, and that the contractor was never in a position to plan and follow any normal sequence in which the work was to be done on the project; that such delays and suspensions of work in excess of those which a contractor could or should reasonably anticipate as being normal, usual and customary in the performance of a contract of this nature.

*Id.*

In addition to his argument based on the express terms of the contract, Foley bases his wrongful prevention claim on the existence of an implied provision in every contract:

> It is hornbook law that an implied provision of every contract is that neither party to the contract will do anything to prevent performance thereof by the other party or commit any act that will hinder or delay performance.

*Peter Kiewit Sons' Company v. Summit Construction Co.*, 422 F.2d 242, 257 (8th Cir. 1969), and *Investors Thrift Corporation v. Hunt*, 387 F.Supp. 517, 524 (W.D.Ark.1974), *aff'd*, 511 F.2d 1161 (1975).

This implied obligation was recognized in *L. L. Hall Construction Company v. United States*, 379 F.2d 559, 563, 177 Ct.Cl. 870 (1966):

> [I]t is clear from the cases cited by the parties and the numerous other decisions of this court, that where the Government unreasonably hinders or delays a contractor's performance, even though it does not prevent the eventual completion of the contract, it has breached its implied obligation not to delay the contract, in the absence of a clause expressly exempting it from such liability.

**7.** See n. 3.

**8.** Appellees claimed that appellant did not properly plead its theory of an implied obliga-

**[3, 4]** We are aware of the existence of an extension of time clause, Section 1C, Article 26,[7] in the specifications of this present case and that if the "Contractor [subcontractor] be delayed at any time in the progress of the Work by any act or neglect of Owner [contractor] * * * then the time of completion shall be extended * * *." Although such a clause, in conjunction with additional facts, may be indicative that a defendant did not obligate itself to complete certain work by a certain time, *Burgess Construction Company v. M. Morrin & Son Company, Inc.*, 526 F.2d 108, 114 (10th Cir. 1975), *cert. denied*, 429 U.S. 866, 97 S.Ct. 176, 50 L.Ed.2d 146 (1976), it does not necessarily provide an exemption from damages for delay. In *Commerce International Company v. United States*, 338 F.2d 81, 167 Ct.Cl. 529 (1964) the plaintiff-contractor's only recourse for delay was to seek an extension of the time of his performance as the contract was absent any warranty for delay damages. However, the court remarked:

> But this general principle presupposes that the Government has met the ever-present obligation of any contracting party to carry out its bargain reasonably and in good faith. * * * It would be intolerable if the Government could disregard that responsibility, or were free to stretch its tardiness for however long it fancied, without sterner control than the mere prolongation of the completion date of the contract.

*Id.* at 85.

In the present case, it may be Foley's burden to prove that any unreasonable or undue delay was tied to appellees' breach of their implied obligation of reasonable cooperation. However, we cannot find in the district court's decision that a ruling was made on this issue. We therefore find that the court failed to rule on appellant's theory of an implied obligation and remand this issue to the district court for a decision based upon the evidence already presented.[8]

tion. However, as heretofore indicated, this implied provision not to hinder or prevent performance was pled in appellant's original and second amended complaints. In the original

The judgment of the district court is affirmed in part and remanded in part for further decision in accordance with this opinion.

complaint appellant stated "Defendant Williams, and parties for whose actions Defendant Williams is legally liable to Plaintiff, obstructed, hindered, interfered with and delayed the performance of Plaintiff's work." In appellant's second amended complaint, appellant alleged, "STANDARD BRANDS, and parties for whose actions STANDARD BRANDS is legally liable to Plaintiff, obstructed, hindered, interfered with, prevented and delayed the performance of Plaintiff's work on the Project, thereby causing substantial damage to Plaintiff."